J-A19017-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: MICHAEL SABATINO, AN ALLEGED INCAPACITATED PERSON | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: DISABILITY RIGHTS PENNSYLVANIA | No. 3836 EDA 2015 |

Appeal from the Decree November 25, 2015
In the Court of Common Pleas of Montgomery County
Orphans' Court at No(s): 2014-X3350

BEFORE: FORD ELLIOTT, P.J.E., OTT, J., and FITZGERALD, J.[*]

MEMORANDUM BY OTT, J.:                    **FILED NOVEMBER 30, 2016**

Disability Rights Pennsylvania, formerly Disability Rights Network of Pennsylvania ("DRN")[1], appeals the final decree, entered November 25, 2015, in the Court of Common Pleas of Montgomery County, adjudicating Michael Sabatino, an alleged incapacitated person, to be totally incapacitated person and appointing a limited guardian of the person for Michael Sabatino.

_____

[*] Former Justice specially assigned to the Superior Court.

[1] DRN notes in its brief: "DRN recently changed its corporate name to Disability Rights Pennsylvania (DRP), and this Court substituted DRP in this appeal. Since the record references DRN, however, Appellant will continue to reference DRN in this Brief." DRN's Brief at 6. We likewise will refer to Appellant as DRN in this memorandum.

DRN contends: (1) The orphans' court erred in denying Mr. Sabatino the right to be represented by counsel of his choice; (2) The orphans' court erred by refusing to disqualify Mr. Sabatino's appointed counsel; (3) The orphans' court's determination that Mr. Sabatino was totally incapacitated and its appointment of a limited guardian of the person was not supported by clear and convincing evidence, and (4) The orphans' court erred in requiring DRN to pay the independent evaluator to testify. Based upon the following, we affirm the orphans' court's final decree, and the orphans' court's related orders, with the exception of the order that required DRN to pay the independent evaluator's court appearance fee. We remand to the orphans' court for a hearing on the allocation of the expert's fee for testifying.

This appeal involves guardianship proceedings instituted on September 26, 2014, by Madelyn Harman ("petitioner" or "mother"), seeking to have her adopted son, Mr. Sabatino, adjudicated an incapacitated person and to have herself appointed plenary guardian of his person and estate. The petition, filed by Patrick J. Bradley, Esquire, alleged Mr. Sabatino, age 26, had been diagnosed as having pervasive developmental disorder, impulse control disorder, and severe anxiety, that cause his incapacity and require that he receive continuous monitoring and care. The petition also stated Mr. Sabatino was living with his mother in Royersford, Montgomery County, was receiving human services through the Pennsylvania Department of Public

Welfare Office of Developmental Programs ("ODP") through the Bureau of Autism Services ("BAS"), and was enrolled in the Adult Waiver Autism program for individuals with autism and/or autism spectrum disorders. *See* Petition Under § 5511 of the Probate, Estates and Fiduciaries Code, 9/26/2014, at ¶¶2, 10, and 13. The petition averred, "Due to the alleged incapacitated person's current mental abilities and level of need, there are no less restrictive alternatives to the appointment of Permanent Plenary Guardian of the ESTATE and PERSON of the alleged incapacitated person." *Id.* at ¶16.

A preliminary decree was issued on September 30, 2014, scheduling a hearing for November 5, 2014, which was later rescheduled to November 19, 2014. By letter to the court, dated October 24, 2014, and filed October 28, 2014, petitioner complied with Section 5511 of the Pennsylvania Probate, Estates and Fiduciaries (PEF) Code, requiring notification to the court "at least seven days prior to the hearing if counsel has not been retained by or on behalf of the incapacitated person." 20 Pa.C.S. § 5511(a). Petitioner's letter informed the court that counsel had not been retained for Mr. Sabatino and no circumstances were known making it appropriate to appoint counsel for him. *See* Notification to the Court of Non Representation of Alleged Incapacitated Person, 10/28/2014.

On November 13, 2014, Shari A. Mamas, Esquire, of DRN, faxed a letter to the orphans' court that indicated DRN would be representing Mr.

Sabatino in the guardianship proceedings, and that the matter would be contested. *See* N.T., 7/28/2015, at 24.[2] On the same day, November 13, 2014, Kelly Darr, Esquire, of DRN entered her appearance for Mr. Sabatino.

On November 14, 2014, the orphans' court received a letter from Ms. Darr, stating "'BAS … asked DRN to provide advocacy services to Mr. Sabatino after he was removed from [his] mother's home and placed into emergency respite due to abuse[/]neglect allegations against his family.'" N.T., 7/28/2015, at 24. The letter further stated an Adult Protective Services investigation had been triggered and was pending when the guardianship petition was filed by petitioner's mother, and "'[c]onsequently, DRN attorney, Shari Mamas, contacted [petitioner's counsel,] Mr. Bradley, on October 30, 2014, to request that he ask [the c]ourt to appoint independent counsel for Mr. Sabatino.'" *Id.* at 25. Ms. Darr's letter advised the court that when Mr. Bradley informed DRN he would not seek independent counsel for Mr. Sabatino, DRN Attorney Gabe Lorenzo, community advocate Martine Lorenzo,[3] and Ms. Darr met with Mr. Sabatino

_____

[2] The orphans' court, prior to the commencement of the guardianship hearing, placed the procedural history of the case on the record. Therefore, this procedural summary includes references to the July 28, 2015 transcript.

[3] Martine DeLorenezo is a DRN lay advocate who "became involved with Mr. Sabatino in the summer of 2014 at the behest of the Bureau of Autism Services (BAS) of the Department of Human Services." Response in Opposition to Petitioner's Motion to Disqualify Ms. Darr and DRN as Respondent's Counsel, 7/14/2015, at ¶1.

to determine if he would like representation in the guardianship proceedings, and Mr. Sabatino indicated he would like legal representation and he verbally agreed to her representation for that purpose.[4] *See id.* at 25.

On December 2, 2014, the orphans' court held an in-chambers conference with Ms. Darr and Mr. Bradley. "It was apparent to [the court] from the outset that the situation was quite tense between th[e]se counsel …." *Id.* at 26. However, the orphans' court believed that "[n]otwithstanding what was the obvious inability of counsel to communicate … it was still possible at that point that an agreement could be reached as to what would be in [Mr. Sabatino's] best interest." *Id.* "One [issue] was [Mr. Sabatino's] placement in a house in Philadelphia where he was geographically removed from visits with his mother, his church, the job he had formerly, and there were questions about whether or not, even if he is incapacitated, does he need a guardianship …." *Id.* at 26–27. At the end of the conference, the orphans' court set a 30-day deadline for the parties to determine "whether or not there would be a resolution short of a hearing to adjudicate incapacity." *Id.* at 27. The orphans' court "also made it clear

---

[4] Ms. Darr and Ms. Labella offered to represent Mr. Sabatino in the guardianship hearing to oppose the petition at no charge. *See* Response in Opposition to Petitioner's Motion to Disqualify Ms. Darr and DRN as Respondent's Counsel, 7/14/2015, at ¶9.

that if they could not do so, [the court] would be appointing independent counsel to represent Mr. Sabatino." ***Id.***

On December 22, 2014, the orphans' court received a letter from Mr. Bradley, asserting that "'[Mr. Sabatino's] team members are not acting in good faith,'" and requesting the court to appoint independent counsel for Mr. Sabatino. ***Id.*** at 27. Mr. Bradley's letter to the court relayed petitioner's concern that Mr. Sabatino "'may be getting used as a pawn in a power struggle by [DRN] to try to exploit the concept of self-determination[.]'" ***Id.*** at 28.

Ms. Darr responded to the letter on December 24, 2014, and "refute[d] the concerns outlined in Mr. Bradley's letter about how the team was at odds on the interests of [Mr. Sabatino]," and concluded by stating that "'There is no reason to appoint independent counsel. … Mr. Sabatino has the right to choose his own counsel for his guardianship hearing, and he has voluntarily retained DRN for this purpose.'" ***Id.*** at 29. Subsequently, on January 5, 2015, the orphans' court issued an order, appointing Diane M. Zabowski, Esquire, as counsel for Mr. Sabatino. ***Id.*** ***See*** Order, filed 1/8/2015.

On March 4, 2015, the court held a conference with counsel, which included Ms. Zabowski, who had requested the conference to discuss an independent medical evaluation for Mr. Sabatino. "No one opposed it[, and] ultimately it was decided that Barabara Malamut, a neuropsychologist …

would … do a comprehensive evaluation of [Mr. Sabatino's] cognitive abilities." N.T., 7/28/2015, at 30. On March 10, 2015, the orphans' court appointed Barbara Malamut, Ph.D., to conduct an independent neuropsychological evaluation of Mr. Sabatino. The orphans' court ordered Montgomery County to make payment for the neuropsychological report rendered by Dr. Malamut. *See* Order, 5/27/2015. Dr. Malamut's report opined Mr. Sabatino was totally incapacitated and recommended appointment of a full plenary guardian of the person and estate for Mr. Sabatino. *See* N.T., 9/9/2015, at 143; Trial Exhibit DRN-6, at 3.

On June 10, 2015, during a court conference, Ms. Zabowski and Mr. Bradley indicated their willingness to stipulate to the admission into evidence of Dr. Malamut's report, without the need for Dr. Malamut's presence at the hearing. *See* N.T., 7/28/2015, at 31. Ms. Darr indicated she would stipulate to admission of the report, but she wanted to examine Dr. Malamut as to her conclusions. *Id.* The orphans' court "made clear" that if Ms. Darr wished to call Dr. Malamut, it would be the expense of DRN. *Id.* The guardianship hearing was set for July 28, 2015.

On July 8, 2015, petitioner filed a motion to disqualify Ms. Darr and DRN. Ms. Darr filed a responsive pleading on July 14, 2015, and the court heard argument on the motion prior to the commencement of the July 28,

2015, guardianship hearing.[5]   The orphans' court denied the motion to disqualify Ms. Darr as Mr. Sabatino's counsel as moot, in light of its earlier order appointing Diane Zabowski, Esquire, as counsel for Mr. Sabatino.  *See* N.T., 7/28/2015, at 38.   The orphans' court further ruled Ms. Darr would remain in the case on behalf of DRN, to whom the court granted *amicus curiae* status, and the court told Ms. Darr "you may **participate fully**" in the proceeding.  *Id.* at 38 (emphasis supplied).  *See also* Order, 7/29/2015. The court then proceeded to hear the case.

The first witness was the petitioner.  She explained that Mr. Sabatino and his two brothers came to live with her when Mr. Sabatino was seven, and his brothers were four and two years old.  N.T., 7/28/2015, at 53. Before Mr. Sabatino was placed with her she was aware he was autistic and did research and had training regarding that condition.  *Id.* at 54.  She testified one of her present concerns was that Mr. Sabatino is easily swayed and says what he thinks people want him to say to please them.  *Id.* at 55. She stated she petitioned to become his guardian because his Individual Service Plan (ISP) team suggested she would need that authority to make medical decisions for Mr. Sabatino that he would be incapable of making on

---

[5] The orphans' court noted on the record:  "In a brief telephone conference this week, we agreed that the motion would be decided first and that there would be no need for a hearing; rather, I would give each party a short opportunity to argue its position."  N.T., 7/28/2015, at 6.

his own.  *Id.* at 56, 60–61.  She also stated that she would accept a third-party guardian, and agreed that Arc Alliance Advocacy Services would serve as guardian for Mr. Sabatino, should the court determined a guardianship was appropriate.  *Id.* at 59–60.  She testified Mr. Sabatino had not lived with her since July, 2014.  *Id.* at 62.  She stated she had visited him in Philadelphia two or three times for ISP meetings, and once his aides brought him "a little closer for me, and we met at a place."  *Id.* at 62.  After the petitioner's testimony, the petitioner rested.  *Id.* at 78.

Ms. Zabowski then presented Mr. Sabatino, who was examined in chambers.  In his testimony, Mr. Sabatino testified he lived alone and two aides came every day.  *Id.* at 83–84.  He stated he had been previously employed, but was currently unemployed and looking for a job.  *Id.* at 85–87.  He described his day and the help he received from the aides, other individuals on his team, and specialists.  He testified his aides "help [him] to be a grown man."  *Id.* at 103.  He further testified he wanted to "speak out [for himself]", and stated that "you have to fight your way."  *Id.* at 103, 104.  Regarding why he had initially indicated he wanted to live in Montgomery or Delaware County, and now wanted to live in Philadelphia, he testified, "[I]t's what my mom wants but that's not right.  It's my choice."  *Id.* at 108.  On cross-examination, he testified he did not want a guardian appointed for him.  *Id.* at 131.

DRN then began its case by calling members of Mr. Sabatino's support staff and BAS to testify about the services provided to him. After DRN had presented its first two witnesses, the hearing was adjourned and a second day of hearing was scheduled for September 9, 2015.

On August 14, 2015, DRN filed a motion to disqualify Ms. Zabowski. Ms. Zabowski filed an answer with new matter on September 3, 2015. The orphans' court, on September 9, 2015, heard argument on the motion just prior to the resumption of the guardianship proceedings.[6] Ms. Darr argued that Ms. Zabowski was violating Pennsylvania Rules of Professional Conduct 1.2 and 1.7 by acting in Mr. Sabatino's best interests rather than acting to support his defense. Ms. Zabowski's attorney countered that Ms. Zabowski was properly acting in accordance with Pa. Rules of Prof. Conduct, Rule 1.14, which addresses the role of an attorney for a client with diminished capacity. The orphans' court denied DRN's motion and the guardianship hearing then resumed.[7] *See* N.T., 9/9/2015, at 20.

---

[6] The orphans' court explained that, similar to the previous motion for disqualification filed by petitioner, it would hear argument on DRN's motion and then make a ruling. *See* N.T., 9/9/2015, at 4.

[7] The orphans' court noted in its opinion that petitioner proceeded *pro se* at the second day of the hearing:

> On July 10, 2015, the Supreme Court of Pennsylvania issued a *per curiam* order placing counsel for the petitioner, Patrick J. Bradley, Esquire, on temporary suspension pursuant to Pa.R.D.E. 208(f)(5) pending further definitive action by the Court.

*(Footnote Continued Next Page)*

- 10 -

The only expert in this case was Dr. Malamut. At the hearing, all counsel stipulated to the admission into evidence of Dr. Malamut's neuropsychological evaluation of Mr. Sabatino, and DRN called Dr. Malamut in its case to testify on cross-examination. *See* N.T., 7/28/2015, at 48–50; N.T., 9/9/2015, at 133–188. Ms. Zabowski also cross-examined Dr. Malamut. *Id.* at 189–212. The evidentiary hearing concluded on September 9, 2015, and closing arguments were heard on October 8, 2015.

On October 16, 2015, DRN filed a motion to reopen and supplement the record to provide evidence regarding the Adult Protective Services investigation of Mr. Sabatino's mother. Following the filing of an answer with new matter, and a reply to new matter, the orphans' court denied the motion on November 25, 2015.

On the same day, November 25, 2015, the orphans' court entered the final decree at issue in this appeal. The orphans' court adjudicated Mr. Sabatino a totally incapacitated person, found that an extensive support network obviates the need for the appointment of a plenary guardian, and appointed Arc Alliance, through its Executive Director of Advocacy, Monica Wiggins, as a limited guardian of the person of Mr. Sabatino with authority

_(Footnote Continued)_ ———————————

> Pa.R.D.E. 208(f)(3) permitted Mr. Bradley to continue representing petitioner, an existing client, for thirty days following the issuance of the Order. Accordingly, Mr. Bradley was permitted to act as counsel through the first day of hearing.

Orphans' Court Opinion, 2/4/2016, at 5 n.3.

- 11 -

to: (1) Authorize and consent to medical treatment and surgical procedures necessary for the well-being of Mr. Sabatino, (2) Enter into contracts for Mr. Sabatino and, as to contracts involving monetary obligations, consult with Mr. Sabatino's representative payee, (3) Have oversight over the Commonwealth and providers of support services to ensure he receives all appropriate services, and (4) Assist Mr. Sabatino in the development of self-reliance and independence; ensure he has visits with his mother and other family members as appropriate, attend all ISP meetings scheduled and any other supportive services meetings, and have contact with Mr. Sabatino and his support staff at least monthly. *See* Final Decree, 11/25/2015.

On December 18, 2015, DRN filed a notice of appeal on behalf of Mr. Sabatino.[8] Thereafter, Ms. Zabowski filed a motion to appoint Donald J. Martin, Esquire, as appellate counsel, and the orphans' court granted the motion by order entered December 22, 2015.[9]

On February 4, 2016, DRN filed a Motion to Supplement the Record to provide evidence that Mr. Sabatino and his guardian authorized DRN to

---

[8] DRN contacted Monica Wiggins, Executive Director of Arc Alliance, and became authorized to file this appeal and represent Mr. Sabatino. *See* Orphans' Court Opinion, 2/4/2016, at 16; DRN's Brief at 9; DRN's Petition to Supplement the Record, 1/8/2016, at 2–3.

[9] The orphans' court noted in its opinion: "Ms. Zabowski does not do appellate work while Mr. Martin is frequently appointed by the Court of Common Pleas of Montgomery County exclusively for appellate purpsoes at a reduced hourly rate." Orphans' Court Opinion, 2/4/2016, at 15 n.7.

represent him on appeal. The orphans' court dismissed the motion as moot in light of the Superior Court's order, dated January 19, 2016. **_See_** Order, 2/4/2016.

On January 19, 2016, this Court issued an order granting DRN's application for correction to amend the caption of this appeal, as follows:

> The caption is AMENDED to read: "APPEAL OF: DISABILITY RIGHTS NETWORK OF PA."
>
> The trial court removed the Disability Rights Network of PA as counsel for Michael Sabatino, and appointed Diane M. Zabowski, Esquire, as attorney of record for Michael Sabatino. There is no indication that Attorney Zabowski withdrew or was removed as attorney of record. Instead Disability Rights Network of PA appeals, _inter alia_, from the order removing it as counsel and attaching Attorney Zabowski as counsel for Michael Sabatino. Accordingly, this Court's Prothonotary is DIRECTED to list Disability Rights Network of PA as Appellant, Madelyn Harmon, as _pro se_ Appellee, Michael Sabatino as Participant, Attorney Zabowski as Counsel for Michael Sabatino, and Attorney Donald Martin as Co-Counsel for Michael Sabatino.

Per Curiam Order, 1/19/2016. In addition, on February 12, 2016, this Court denied the application to quash filed by Michael Sabatino, through his counsel, Ms. Zabowski and Mr. Martin. This Court's order stated:

> The motion of Michael Sabatino, by his court appointed attorneys, to quash this appeal from the November 25, 2015 final decree, is hereby DENIED as moot in light of this Court's order granting the motion for correction filed by the Disability Rights Network of PA. **_See In Re: Sabatino_**, No. 3836 EDA 2015 (Pa. Super. January 19, 2016).

Per Curiam Order, 2/12/2016.

Based on this Court's orders of January 19, 2016, and February 12, 2016, it is clear that DRN has standing to appeal the orders of the orphans' court that (1) disqualified Ms. Darr as Mr. Sabatino's counsel, (2) denied DRN's motion to disqualify Ms. Zabowski, and (3) required DRN to compensate Dr. Malamut for her time in court. While this Court's orders may be ambiguous as to DRN's standing to appeal the final decree appointing a limited guardian for the person of Mr. Sabatino, because Mr. Sabatino's court-appointed guardian authorized DRN to file this appeal on behalf of Mr. Sabatino, we find DRN does have standing to challenge the final decree.

Turning to the issues raised by DRN, we first address DRN's contention the orphans' court erred in denying Mr. Sabatino the right to choose his own counsel.

> When reviewing a trial court's order on disqualification of counsel, we employ a plenary standard of review. Courts may disqualify attorneys for violating ethical rules. On the other hand, courts should not lightly interfere with the right to counsel of one's choice. Thus, disqualification is appropriate only when both another remedy for the violation is not available and it is essential to ensure that the party seeking disqualification receives the fair trial that due process requires.

*Weber v. Lancaster Newspapers, Inc.*, 878 A.2d 63, 80 (Pa. Super. 2005) (citations omitted).

Preliminarily, we note that it would have been preferable for the orphans' court to hold a hearing prior to issuing its January 5, 2015, order that appointed Ms. Zabowski as Mr. Sabatino's counsel, and effectively disqualified Ms. Darr as his counsel. *See* Order, filed 1/8/2015. However,

the issue arose again on July 8, 2015, when petitioner filed a motion to disqualify Ms. Darr and DRN. On July 28, 2015, the orphans' court heard argument on the motion, and Mr. Bradley and Ms. Darr argued their respective positions to the court.[10] At that time, the orphans' court discussed the reasons for its January 5, 2015 order. *See* N.T., 7/28/2015, at 29, 31–39. As already stated, the orphans' court denied the motion to disqualify Ms. Darr from the case as moot, ruled Ms. Darr was present on behalf of DRN, to whom the court granted *amicus curiae* status, and stated Ms. Darr was permitted to "**participate fully**" in the proceeding. *Id.* at 38 (emphasis added). The court's ruling was reduced to an order that provided, in part:

> [T]he motion is hereby DENIED as MOOT pursuant to this Court's earlier advices that Kelly Darr, Esquire, may not represent Michael Sabatino, an alleged incapacitated person, and pursuant to this Court's appointment of Diane M. Zabowski, Esquire, as his counsel on January 5, 2015. The Disability Rights Network is granted *amicus curiae* status and permitted to participate herein."

Order, 7/29/2015.

_____

[10] The orphans' court judge acknowledged that when he appointed Ms. Zabowski on January 8, 2015, "I should have issued an order, perhaps, directing you [Ms. Darr] to withdraw your appearance on behalf of [Mr. Sabatino] and enter your appearance on behalf of [DRN]. I don't know that that would have said anything that wasn't already said, but, perhaps procedurally, it might have been a better idea." N.T., 7/28/2015, at 37.

In its opinion, the orphans' court summarized its reasons for appointing Ms. Zabowski as Mr. Sabatino's counsel after Ms. Darr had entered her appearance on Mr. Sabatino's behalf:

> The Court's reasoning in denying DRN the right to represent Mr. Sabatino and its appointment of Ms. Zabowski was stated multiple times on and off the record throughout these tortuous proceedings. To recap, first and foremost, in every contested guardianship proceeding in Montgomery County for more than twenty years, if an alleged incapacitated person does not retain counsel independently, this Court has appointed independent counsel whose loyalty to the alleged incapacitated person cannot be questioned. Second, because DRN was inextricably intertwined with the various entities making up Mr. Sabatino's support team, which Mr. Sabatino's petitioning mother deemed antagonistic to her, the appointment of independent counsel was necessary to avoid the appearance of an unfair advantage.

Orphans' Court Opinion, 2/4/2016, at 17–18. Additionally, the orphans' court opined:

> After the filing of the petition, DRN, which was already providing lay advocacy services to Mr. Sabatino, sought to become his legal counsel as well. Notwithstanding Mr. Sabatino's well-documented and known intellectual disabilities, Ms. Darr and Gabriella Labella (a DRN staff attorney) went to visit Mr. Sabatino in his apartment on their own initiative. Those attorneys allege that Mr. Sabatino agreed to let them represent him (at no charge) pursuant to his statement that he did not want a guardian. This was hardly a situation where Mr. Sabatino sought out and retained independent counsel to represent him.

*Id.* at 18–19.

With regard to this final finding, the orphans' court, on the record, had distinguished **In re Estate of Rosengarten**, 871 A.2d 1249 (Pa. Super. 2005), cited by DRN in support its position that Mr. Sabatino had the right to choose his own counsel:

- 16 -

[I]n that case [] Ms. Rosengarten wrote to the court a very cogent and practical letter, and, yes, it did involve her right to retain her own counsel; although, it was under far different circumstances than that which was involved here. There the guardian was filing a petition to sell Ms. Rosengarten's house, and Ms. Rosengarten was of the opinion that her counsel court-appointed was not speaking for her and would not speak for her; so she went out to retain her own counsel. That counsel didn't approach her; she approached them. And the court ultimately said under those circumstances, she had the right to do so.

None of those facts are the facts of this case, and I stand by what I said earlier that this case follows the same pattern that I have done for 21 years.

N.T., 7/28/2015, at 39.

DRN argues the court's findings do not support the court's January 5, 2015, decision to appoint Ms. Zabowski to represent Mr. Sabatino, and effectively disqualify Ms. Darr. First, DRN asserts that because Ms. Darr had entered her appearance for Mr. Sabatino, there was no cause for the court to appoint Ms. Zabowski. **See** DRN Brief at 22–23.

Furthermore, DRN contends the orphans' court erred in suggesting Mr. Sabatino lacked capacity to authorize Ms. Darr and DRN to represent him due to his disabilities. DRN relies on **Rosengarten, supra**, and argues "even individuals who are adjudicated incapacitated have the right to representation by counsel of their choice." **See** DRN's Brief at 23.

Finally, DRN objects to the court's reasoning that "DRN was inextricably intertwined with the various entities making up Mr. Sabatino's support team," which "Mr. Sabatino's petitioning mother deemed antagonistic to her [so] the appointment of independent counsel was

necessary to avoid the appearance of an unfair advantage." Orphans' Court Opinion at 18.

Having carefully considered DRN's arguments in light of the record, we conclude that, even accepting, *arguendo*, DRN's claim that the court's findings do not justify disqualification of Ms. Darr as Mr. Sabatino's counsel, DRN's claim fails because the court's appointment of Ms. Zabowski as Mr. Sabatino's counsel neither ended Ms. Darr's and DRN's involvement in the case, and nor Ms. Darr's efforts on behalf of Mr. Sabatino.

This court has held that "if the certified trial record does not contain sufficient facts to support the trial court's ruling [to disqualify counsel], and if that ruling had a harmful effect upon the outcome of the case, the only remedy is to grant a new trial." **McCarthy v. Southeastern Pa. Transp. Auth.**, 772 A.2d 987, 995 (Pa. Super. 2001). Harmless error is defined as an error that does not affect the verdict. **Yacoub v. Lehigh Valley Medical Associates, P.C.**, 805 A.2d 579, 590 (Pa. Super. 2002).

Here, the orphans' court made clear that Ms. Darr would remain in the case representing DRN, to which *amicus curiae* status was granted, and she was allowed to "**participate fully**" in the guardianship proceedings. N.T., 7/28/2015, at 38 (emphasis added); **see also** Order, 7/29/2015. The record reflects that throughout the proceeding, Ms. Darr forcefully advocated for Mr. Sabatino's position against the guardianship by presenting witnesses, cross-examining witnesses, and making legal argument to the court.

- 18 -

Consequently, we conclude that the orphans' court's disqualification of Ms. Darr as Mr. Sabatino's counsel was harmless error that did not affect the final decree.

DRN, however, contends the orphans' court's ruling was harmful because: (1) Once Ms. Darr was removed as Mr. Sabatino's counsel, she was no longer able to meet privately with him, and had she been able to maintain a confidential attorney-client relationship with him, she may well have put forward additional testimony from him and had him evaluated by another expert; (2) Mr. Sabatino unequivocally testified on the record that he did not want to have a guardian appointed, and Mr. Sabatino was entitled to have an attorney who was willing to advance his objective, which his appointed counsel indisputably refused to do; (3) Rather than requiring petitioner to prove by clear and convincing evidence that Mr. Sabatino needs a guardian, the orphans' court allowed appointed counsel for Mr. Sabatino to put on evidence in favor of guardianship; (4) The orphans' court's removal of Mr. Sabatino's chosen counsel prejudiced him by precluding him from pursuing an appeal since his court-appointed counsel did not file an appeal and, in fact, sought to quash the instant appeal, and (5) The appointment of alternative counsel for Mr. Sabatino may prejudice him well into the future because it is likely the court will not allow him to choose his own counsel and will compel his representation by appointed counsel. **See** DRN's Reply Brief at 7–9.

Furthermore, DRN relies on the United States Supreme Court decision in **United States v. Gonzalez-Lopez**, 548 U.S. 140 (2006), which held that the erroneous disqualification of counsel is a "structural error" that is not subject to a harmless error analysis. DRN's Reply Brief at 4. Although, unlike **Gonzalez**, the present case involves neither a criminal defendant nor Sixth Amendment violation, DRN maintains that the reasoning of **Gonzalez Lopez** applies equally here because the guardianship "infringes upon Mr. Sabatino's liberty interests." DRN's Reply Brief at 5.[11]

We are not persuaded by the above arguments for the following reasons: (1) Ms. Darr had a confidential attorney-client relationship with Mr. Sabatino until Ms. Zabowski was appointed as his counsel, and continued to have contact with him thereafter in the presence of Ms. Zabowski, and DRN fails to identify any additional witnesses that it wanted to call, nor any denied opportunity to challenge the expert's report; (2) The orphans' court was fully aware of Mr. Sabatino's desire not to have a guardian, and allowed Ms. Darr to fully advance this position; (3) Ms. Zabowski told the court Mr. Sabatino did not want a guardian; (4) DRN has been permitted by this Court to proceed on appeal to litigate the final decree and the court's orders; and

---

[11] DRN points to **In re Doe 06-C**, 948 So.2d 30, 32 (Fla. Dist. Ct. App. 2006), where the Florida District Court of Appeals applied **Gonzalez Lopez** in a case involving a minor's petition for a judicial waiver of parental notice of termination of pregnancy. **See** DRN Reply Brief at 5.

(5) DRN's assertion that Mr. Sabatino will not be able to choose his own counsel in the future is speculative. Accordingly, DRN's contention that the orphans' court's disqualification of Ms. Darr was not harmless error fails.

Furthermore, we reject DRN's reliance on **Gonzalez Lopez** for the proposition that the harmless error standard does not apply, as neither a criminal defendant nor Sixth Amendment issue is presented by this case.

In sum, we find that the court's order appointing Ms. Zabowski as Mr. Sabatino's counsel was not error. Furthermore, her appointment as a replacement for, rather than in addition to, Ms. Darr was harmless error, since Ms. Darr was permitted to remain in the case on behalf of DRN, *amicus curiae*, and to fully advocate Mr. Sabatino's position in opposition to the guardianship petition. Consequently, no relief is due on the first issue raised by DRN.[12]

Secondly, DRN contends the orphans' court erred in refusing to disqualify Ms. Zabowski as Mr. Sabatino's counsel. "When reviewing a trial court's order on disqualification of counsel, we employ a plenary standard of review." **Weber v. Lancaster Newspapers, Inc., supra**, 878 A.2d at 80.

DRN argues that Ms. Zabowski failed to act as adversarial counsel for Mr. Sabatino, and instead essentially acted as a guardian *ad litem* by

---

[12] To the extent that DRN contends that the orphans' court erred in appointing Mr. Martin as appellate co-counsel for Mr. Sabatino in this appeal, DRN can show no harm as DRN has been permitted by this Court to proceed with this appeal and challenge the final decree.

advocating in favor of guardianship. In this regard, DRN claims Ms. Zabowski violated her ethical duties to Mr. Sabatino to abide by his wishes. DRN points to Pennsylvania Rule of Professional Conduct 1.2(a), which provides that "a lawyer shall abide by a client's decisions concerning the objectives of representation[.]" DRN also cites Pa. Rules of Prof. Conduct, Rule 1.7(a), which provides that, subject to certain specified exceptions, "a lawyer shall not represent a client if the representation involves a concurrent conflict of interest." DRN argues Ms. Zabowski failed to give her undivided loyalty to her client, in violation of Rule 1.7(a), and failed to act in accordance with her client's objective to oppose guardianship, in violation of Rule 1.2(a), and disclosed Mr. Sabatino's confidences in violation of Pa. Rules of Prof. Conduct, Rule 1.6. DRN further maintains that by allowing Ms. Zabowski to represent Mr. Sabatino's best interests and denying him adversarial counsel, the court violated Mr. Sabatino's bests interests.

DRN, in its motion seeking to disqualify Ms. Zabowski, alleged Ms. Zabowski had acted improperly by advising the orphans' court at an in chambers conference that Mr. Sabatino needed some form of guardianship, and pursuing an objective contrary to Mr. Sabatino's wishes to oppose the guardianship. *See* DRN's Motion to Disqualify, 8/14/2015, at ¶¶26–27. In support of its motion, and in its appellate brief, DRN cites two cases for the proposition that court appointed counsel must take an adversarial position on behalf of the alleged incapacitated person. *See* DRN's Brief at 32–34,

citing ***In re M.R.***, 638 A.2d 1274 (N.J. 1994) and ***In re Lee***, 754 A.2d 426 (Md. Ct. Spec. App. 2000). These cases, however, are from other jurisdictions and are not controlling or persuasive.

The role of counsel in a guardianship proceeding is not clearly defined in the guardianship statute. ***See*** 20 Pa.C.S. § 5511(a) (providing for court appointed counsel for the alleged incapacitated person). The following provisions of the PEF Code guide our review. Section 5501 of the PEF Code defines an incapacitated person as:

> [A]n adult whose ability to receive and evaluate information effectively and communicate decisions in any way is impaired to such a significant extent that he is partially or totally unable to manage his financial resources or to meet essential requirements for his physical health and safety.

20 Pa.C.S. § 5501. Furthermore, Section 5502 states the purpose of Chapter 55 of the Code, dealing with incapacitated persons, as follows:

> Recognizing that every individual has unique needs and differing abilities, it is the purpose of this chapter to promote the general welfare of all citizens by **establishing a system which permits incapacitated persons to participate as fully as possible in all decisions which affect them**, which assists these persons in meeting the essential requirements for their physical health and safety, protecting their rights, managing their financial resources and developing or regaining their abilities to the maximum extent possible and which accomplishes these objectives through the use of the least restrictive alternative; and recognizing further that when guardianship services are necessary, it is important to facilitate the finding of suitable individuals or entities willing to serve as guardians.

20 Pa.C.S. § 5502 (emphasis added).

In light of these provisions, counsel appointed to represent the alleged incapacitated person must present the alleged incapacitated person's own position to the court. *See generally*, 20 Pa.C.S. § 5502. However, counsel must also consider the interests of the alleged incapacitated person under 20 Pa.C.S. § 5501 (defining incapacitated person). In this regard, counsel's ethical obligations are set forth at Pa. Rules of Prof. Conduct, Rule 1.14, regarding representing a client with diminished capacity.

Rule 1.14, which addresses representation of a person with diminished capacity, states:

a) When a client's capacity to make adequately considered decisions in connection with a representation is diminished, whether because of minority, mental impairment or for some other reason, the lawyer shall, as far as reasonably possible, maintain a normal client-lawyer relationship with the client.

b) When the lawyer reasonably believes that the client has diminished capacity, is at risk of substantial physical, financial or other harm unless action is taken and cannot adequately act in the client's own interest, the lawyer may take reasonably necessary protective action, including consulting with individuals or entities that have the ability to take action to protect the client and, in appropriate cases, seeking the appointment of a guardian ad litem, conservator or guardian.

c) Information relating to the representation of a client with diminished capacity is protected by Rule 1.6. When taking protective action pursuant to paragraph (b), the lawyer is impliedly authorized under Rule 1.6(a) to reveal information about the client, but only to the extent reasonably necessary to protect the client's interests.

Pa. Rules of Prof. Conduct, Rule 1.14.

The trial court, in support of its ruling denying DRN's motion to disqualify Ms. Zabowski, opined:

> The gravamen of the charges centers on Ms. Zabowski's concern for her client's best interests which she continued to weigh throughout the proceedings, rather than blindly opposing any guardianship, regardless of the circumstances. Ms. Zabowski, an experienced and capable trial attorney who has represented many alleged incapacitated persons both privately and pursuant to court appointments, did nothing to deserve this *ad hominem* assault. Furthermore, all of Ms. Zabowski's actions and the outcome for which she argued were proper under Pa. Rule of Professional Conduct 1.14, which deals with a client with diminished capacity.

Orphans' Court Opinion, 2/4/2016, at 20. We find no basis upon which to find error in this analysis and the court's attendant ruling.

Here, after being appointed to represent Mr. Sabatino,[13] Ms. Zabowski met with him and, based on her personal experience of representing alleged

_____

[13] Although the order appointing Ms. Zabowski as Mr. Sabatino's counsel did not refer to her as "independent" counsel, it is clear from the judge's discussions on the record and his opinion that his intent was that Ms. Zabowski represent both Mr. Sabatino's legal interest and best interests in accordance with Rule 1.14.

At the time of her appointment, the Honorable Stanley Ott, an Orphans' Court Judge with more than 20 years' experience, knew that the petition alleged Mr. Sabatino had been diagnosed as having a pervasive developmental disorder, which was not denied by any answer; that Ms. Darr had fully adopted Mr. Sabatino's position against the guardianship petition; and that Mr. Sabatino's mother was requesting a plenary guardianship for Mr. Sabatino.

incapacitated persons, concluded he was a client with diminished capacity.[14,]

Subsequently, and before the initial hearing on the guardianship petition, Ms. Zabowski received Dr. Malamut's report, opining Mr. Sabatino was "totally unable to meet the essential requirements for his physical health and safety (20 Pa.C.S.A. § 5505)," and recommending a full plenary guardian for the person and the estate of Mr. Sabatino.[15] Ms. Zabowski called Mr. Sabatino as a witness so that he could testify as to his own desires, and he was cross-examined by Ms. Darr. *See* N.T., 7/28/2015, at 68, 81–142.

Based on our review, we agree with the orphans' court that Ms. Zabowski, an experienced attorney,[16] did not violate her duty to Mr. Sabatino when she acted in accordance with Pa. Rules of Prof. Conduct, Rule 1.14.[17] Ms. Zabowski reasonably believed, based on the evaluation of Dr.

_____

[14] *See* Answer with New Matter to Motion to Disqualify Diane M. Zabowski, Esquire, as Counsel for Respondent, Michael Sabatino, 9/3/2015, ¶82.

[15] *Id.* at ¶84; Trial Exhibit DRN-6, at 3.

[16] The orphans' court stated, "Frequently, over the last 21 years, the person appointed [for the alleged incapacitated person] has been Diane Zabowski … I've used her a lot." N.T., 7/28/2015, at 33.

[17] This author was a member of the Pennsylvania Supreme Court's Elder Law Task Force, which issued a Report and Recommendations of the Elder Law Task Force in November, 2014, and currently serves as Chair of the Advisory Council to the Office of Elder Justice in the Courts. (Rec. 1 & 2). The Guardians and Counsel Committee of the Task Force addressed the role of counsel in guardianship matters, and made findings, including:

a. Representation of diminished capacity client

*(Footnote Continued Next Page)*

_____

> The Pennsylvania Rules of professional Conduct provide excellent and adequate guidance.[31] [[31] Pa. R. Prof'l Conduct 1.14 – Client with Diminished Capacity] ….
>
> b. <u>Representation of respondent during proceedings to adjudicate incapacity</u>
>
> The attorney must balance both best interests and zealous advocacy. Pa.R.Prof'l Conduct 1.14, including comments, provides an excellent roadmap for the appropriate application of each standard.

Report and Recommendations of the Elder Law Task Force, 11/2014, Guardians and Counsel Committee Report, § VIII.B.1.a.-b., at 50.

Among the Categorized Recommendations of the Elder Law Task Force to the Supreme Court of Pennsylvania are the following recommendations:

> **Recommendation 51:** The Task Force recommends that the Orphans' Court Procedural Rules and/or Disciplinary Rules be amended to require attorneys to clarify to the client , the court, and all other involved parties which role or roles counsel is assuming and to clarify those role(s) through a letter of engagement stating who is being represented and describing counsel's role. It should also be required that these role(s) be restated to the court when entering an appearance with the court. *See Guardians and Counsel Committee Report,* § VIII.C.1.d. Page 51

****

> **Recommendation 126:** The Task Force recommends that discussions among attorneys and judges to better define the roles of counsel in guardianship matters be encouraged, and involve the participation of the PBA and local bar associations. *See Guardians and Counsel Committee Report,* § VIII.C.1.a. Page 51
>
> **Recommendation 127:** The Task Force recommends that the PBA and local bar associations be involved in providing support, advice, and ethical counsel for attorneys willing to assume any of the roles of counsel in a guardianship matter. *See Guardians and Counsel Committee Report,* § VIII.C.1.c. Page 51

*(Footnote Continued Next Page)*

Malamut, that her client had diminished capacity and was at risk for substantial physical, financial or other harm, and it was appropriate to seek the appointment of a guardian. *See* Pa. Rules of Prof. Conduct, Rule 1.14(b).

After DRN's motion to disqualify Ms. Zabowski was denied and the proceeding resumed, Ms. Zabowski cross-examined Dr. Malamut, and, in her closing, highlighted Mr. Sabatino's view that he did not need a guardian. *See* N.T., 10/8/2015, at 46. In doing so, Ms. Zabowski acted properly in making Mr. Sabatino's position clear to the court.

Furthermore, we reject DRN's contention that Ms. Zabowski breached her duty under Pa. Rules of Prof. Conduct, Rule 1.6(a) to maintain Mr. Sabatino's confidences by framing a question to Mr. Sabatino based on information he had provided to her. DRN asserts, "In an effort to show that Mr. Sabatino frequently changes his mind, Ms. Zabowski revealed that he previously told her that he wanted to live in Montgomery County or Delaware County, rather than Philadelphia." *See* DRN's Brief at 35, citing N.T., 7/28/2015, at 107–108. We find this question was permissible under Rule 1.14(c). Moreover, we fail to understand how this question was a breach of confidence since Mr. Sabatino's mother testified she was

*(Footnote Continued)* ————————————

*Id.* at 238, 244.

concerned Mr. Sabatino was easily swayed and says what he thinks people want him to say to please them, Dr. Malamut's report indicated Mr. Sabatino "appeared overly eager to please the examiner,"[18] and the orphans' court judge also discussed in his opinion that it was clear from Mr. Sabatino's examination that he wished to please whoever was asking him questions. *See* Orphans' Court Opinion, 2/4/2016, at 6–7.

Finally, we reject DRN's extensive argument that the orphans' court denied Mr. Sabatino due process by allowing Ms. Zabowski to represent his best interests and denying him adversarial counsel to oppose the guardianship. As already discussed, Ms. Zabowski presented Mr. Sabatino as a witness, cross-examined Dr. Malamut, and presented Mr. Sabatino's position to the court, and Ms. Darr, representing DRN as *amicus curiae*, continually and forcefully advocated Mr. Sabatino's position against any form of guardianship. The desired balance between zealous advocacy and best interests was achieved throughout the proceedings. Accordingly, we reject DRN's claims that the orphans' court erred in denying Mr. Sabatino due process.

Third, DRN argues that the orphans' court's appointment of a limited guardian for the person of Mr. Sabatino is not supported by clear and convincing evidence.

---

[18] Trial Exhibit DRN-6, at 10.

Our standard of review is well established: "The orphans' court' factual findings receive the same deference accorded factual findings of a jury, but we must ensure that the decision of the court is free from legal error." ***Rosengarten, supra***, 871 A.2d 1249, 1253 (Pa. Super. 2005).

Section 5511(a) of the PEF Code provides, in relevant part:

> The court, upon petition and hearing and upon the presentation of clear and convincing evidence, may find a person domiciled in the Commonwealth to be incapacitated and appoint a guardian or guardians of his person or estate.

20 Pa.C.S. § 5511(a).

As already discussed, an "incapacitated person" is defined as:

> [A]n adult whose ability to receive and evaluate information effectively and communicate decisions in any way is impaired to such a significant extent that he is partially or totally unable to manage his financial resources or to meet essential requirements for his physical health and safety.

20 Pa.C.S. § 5501. Furthermore,

> a person is presumed to be mentally competent, and the burden is on the petitioner to prove incapacity by clear and convincing evidence. ***In Re Myers' Estate***, 395 Pa. 459, 150 A.2d 525, 526 (1959). Our review of the trial court's determination in a competency case is based on an abuse of discretion standard, recognizing, of course, that the trial court had the opportunity to observe all of the witnesses, including, as here, the allegedly incapacitated person. ***Id***. "A finding of mental incompetency is not to be sustained simply if there is any evidence of such incompetency but only where the evidence is preponderating and points unerringly to mental incompetency." ***Id***. at 527.

***In re Hyman***, 811 A.2d 605, 608 (Pa. Super. 2002).

At the close of the hearing, the orphans' court judge placed his findings of facts and conclusions of law on the record.[19] **See** 20 Pa.C.S. § 5512.1(a).[20] The orphans' court judge stated:

> Characteristically, [Dr. Malamut's] report, issued April 3 of 2015, was comprehensive, detailed, and quite specific outlining the results of multiple tests, which I will not go over here; however,

---

[19] **See** N.T., 10/8/2015, at 54–74.

[20] Section 5512.1(a) provides:

> In all cases, the court shall consider and make specific findings of fact concerning:
>
> > (1) The nature of any condition or disability which impairs the individual's capacity to make and communicate decisions.
> >
> > (2) The extent of the individual's capacity to make and communicate decisions.
> >
> > (3) The need for guardianship services, if any, in light of such factors as the availability of family, friends and other supports to assist the individual in making decisions and in light of the existence, if any, of advance directives such as durable powers of attorney or trusts.
> >
> > (4) The type of guardian, limited or plenary, of the person or estate needed based on the nature of any condition or disability and the capacity to make and communicate decisions.
>
> > (5) The duration of the guardianship.
>
> > (6) The court shall prefer limited guardianship.

20 Pa.C.S. § 5512.1(a).

I will highlight several of the pertinent findings in that report, which is not to be to the exclusion of others, but I think the ones that matter the most for this analysis are as follows:

From page 2: "In addition to autism, Michael has mild intellectual impairment with extremely low verbal and visual perceptual reasoning abilities. His academic skills are rudimentary. While he can read words at a fourth-grade level, his comprehension is estimated to fall at the first-grade level.

"In addition, Michael had difficulty when tasks were reliant on more complex verbal and visual spacial reasoning skills that involved executive functions, such as divided attention and working memory, which also were extremely low.

"Moreover, his weaknesses with attention and receptive language skills have a negative impact on his ability to acquire information  that he hears only once."

From page 3: "Because he has problems with abstract reasoning, he cannot always generalize past learning to new situations and needs guidance whenever a new problem arises.

"Further, his attention and working memory impairments interfere with his ability to process a situation fully and appreciate the risks and benefits to make sound decisions.

"Neurocognitive and social disabilities and emotional vulnerabilities have a substantial negative impact on his ability to function in a safe manner with total independence, and he will always be in need of some level of support in all aspects of his life, including but not limited to living arrangements, medical and financial management and decision making, negotiating social relationships, finding and maintaining a job, and transportation."

Ultimately, Dr. Malamut opined that "Michael is incapable of receiving and evaluating medical and financial information effectively and consistently making decisions in a rational and consistent manner to such an extent that he is totally unable to meet the essential requirements for his physical health and safety."

That's pretty unequivocal, and it's pretty certain, and it's understandable, and it's believable, and it's credible, because in

addition to those opinions, which were backed up when she was cross-examined, she never wavered.

I had the opportunity to see and listen to Michael as he was examined by counsel in my chambers on the first day of trial. He's a remarkably likable young man in every way, very affable, very pleasant, instantly likeable, but at the same time, objectively its very clear that the limitations outlined by Dr. Malamut are real, and they are pervasive.

I quickly determined that he was easily led. I would have no difficulty concluding that I could have gotten Michael to agree to virtually anything, I think, because I think all it really takes is a kind voice with a smile, and he'll pretty much go along with what you're saying. That was apparent.

Thus, looking at the criteria in the determination section, which counsel have cited to, namely 5512.1, Subsection (a) asks the Court to consider and make specific findings concerning, one, the nature of any condition or disability which impairs the individual's capacity to make and communicate decisions and the extent of the individual's capacity to make and communicate decisions. Well, that's what I just read from [Dr.] Malamut. She said it as well as I can say it. I find her credible, and I accept her testimony in full in that regard.

I accept further that her testimony to the effect that this will never change is credible and accurate. To the extent of Michael's disabilities, his rudimentary skills, his fourth-grade reading level with a first-grade comprehension is something that we have to deal with and that he has to deal with.

I think in this section [20 Pa.C.S. § 5512.1(a)] the most difficult one to draw conclusions about and make findings on -- although I will -- is Subsection 3, and that says to consider the need for guardianship services, if any, in light of such factors as the availability of family, friends, and other supports to assist the individual in making decisions, and in light of the existence, if any, of advance directives such as durable powers of attorney or trust.

The latter part of that has no application here. Michael has never executed any documents and could not execute any document as Dr. Malamut made perfectly clear. He does not

have the capacity to sign a valid power of attorney or healthcare proxy or anything of that event.

\*\*\*\*

I do think that Michael can benefit from an array of services, some of which are being provided for him, but I don't believe that the services in place and the way they are being administered -- … --I don't believe that they are adequate substitutes for a guardian here.

\*\*\*\*

I want to make it clear I credit the testimony of Dr. Malamut that Michael is a totally incapacitated person as that term is defined. That does not mean, however, that there can only be a plenary guardianship. That would be inconsistent with the less restrictive alternative which is always favored.

\*\*\*\*

… I intend to appoint a limited guardian of Michael's person[.]

N.T., 10/8/2015, at 58–62, 66–69.

Here, DRN makes a two-fold argument: (1) The evidence does not clearly and convincingly demonstrate that Mr. Sabatino is incapacitated, and (2) the evidence does not clearly and convincingly demonstrate that Mr. Sabatino needs a limited guardian of the person. DRN maintains that Mr. Sabatino, in his testimony, "reflected an ability to receive and evaluate information and use it effectively to make and communicate decisions to meet his needs." DRN's Brief at 48. Furthermore, DRN cites **In re Peery**, 727 A.2d 539 (Pa. 1999), wherein the Pennsylvania Supreme Court held that "a person cannot be deemed incapacitated if his impairment is counterbalanced by friends or family or other support." **Id.** at 541. DRN

maintains that Mr. Sabatino "has an exceptional and reliable support system in place negating the need for guardianship[.]" DRN's Brief at 52.

In his opinion, the trial judge discussed DRN's reliance on **Peery** and opined that "the guardianship was necessary and appropriate", explaining:

> Instantly, DRN insists that despite Mr. Sabatino's acknowledged incapacity, the support systems now in place are a viable less restrictive alternative. It is wrong. As explained by Dr. Malamut, no support system can account for all of the vulnerabilities of Mr. Sabatino. He is vulnerable to designing persons and, by extension, to members of his team who might be advancing a separate agenda. The limited guardianship imposed by this Court was carefully crafted and provides Mr. Sabatino protection by declaring him incapable of entering contracts and providing his limited guardian with authority to make appropriate medical decisions on his behalf. Just as important, given the antipathy between the various team members and Mr. Sabatino's family, his stated desire to visit with his mother and other family is presently being frustrated and the limited guardian can provide oversight to ensure that this does not continue. To be sure, a limited guardianship of the person only is the least restrictive alternative available to ensure that Mr. Sabatino's needs are met.

Orphans' Court Opinion, 2/4/2016, at 21.

Based on our review of the record, we conclude, without hesitation, that the orphans' court did not err in adjudicating Mr. Sabatino a totally incapacitated person and appointing a limited guardian of the person of Mr. Sabatino with authority over social services, contracts, health care and family relationships. **See** Final Decree, 11/25/2015.

In this case, the orphans' court had the opportunity to hear and consider the testimony of petitioner, Mr. Sabatino's mother; Mr. Sabatino, himself; the various representatives of the support services provided to Mr.

Sabatino; and Dr. Malamut. Here, the orphans' court credited Dr. Malamut's testimony as to Mr. Sabatino's capacity and carefully crafted the limited guardianship of the person of Mr. Sabatino in four areas. The record evidence supports the decision of the orphans' court judge and, therefore, we will not substitute our judgment for that of the lower court absent a clear abuse of discretion. **See In re Hyman, supra**, 811 A.2d at 608. Accordingly, we reject DRN's third claim and affirm the orphans' court's final decree.[21]

Lastly, DRN contends the orphans' court erred in obligating DRN to pay for Dr. Malamut, the independent evaluator, to appear and testify at the hearing.

We review a trial court's allocation of expert fees for an abuse of discretion. **See Pavex, Inc. v. York Fed. Sav. & Loan Ass'n**, 716 A.2d 640, 647 (Pa. Super. 1998).

Pursuant to Section 5511(c) of the PEF Code, the orphans' court may order an independent evaluation paid for by the county if the alleged incapacitated person is unable to pay the cost. 20 Pa.C.S. 5511(c)-(d). Furthermore, Section 5518.1 provides that "[t]estimony as to the capacity of

---

[21] It bears mention that a final decree may always be reviewed "if the incapacitated person, guardian or any interested party petitions the court for a hearing for reason of a significant change in the person's capacity, a change in the need for guardianship services or the guardian's failure to perform his duties in accordance with the law or to act in the best interest of the incapacitated person." 20 Pa.C.S. § 5512.2.

the alleged incapacitated person shall be subject to cross-examination by counsel for the alleged incapacitated person." 20 Pa.C.S. § 5518.1.

As already mentioned, the parties agreed that the orphans' court judge would appoint Dr. Malamut as independent evaluator. The orphans' court ordered Dr. Malamut to conduct a neuropsychological evaluation of Mr. Sabatino and ordered the county to compensate Dr. Malamut for her report. *See* Orders, 3/10/2015, 5/27/2015.

The orphans' court discussed Dr. Malamut's report and testimony with counsel at a court conference on June 10, 2014, which the court recounted on July 28, 2015, the first day of the hearing:

> I appointed Dr. Malamut. She issued a comprehensive evaluation under date of May 17th. I was on vacation. When I came back on May the 26th, I immediately e-mailed it to counsel, and we had a conference again on June 10th of 2015.
>
> I asked if everybody had a chance to digest the report, and they had. Ms. Zabowski and Mr. Bradley indicated they would stipulate to the admission of the report without the need for Dr. Malamut's presence. Ms. Darr indicated she would stipulate to its admission, but she wanted to examine Dr. Malamut as to her conclusions.
>
> I made it clear to her that under those circumstances if she wished to call Dr. Malamut, she could, but she would be her witness, and it would be at the expense of DRN if they wanted to call her.

N.T., 7/28/2015, at 30-31.[22]   As the orphans' court notes in its opinion, "DRN arranged for Dr. Malamut to sit through the testimony of every witness over two full days of hearing before she was called to the stand on the second day."  Orphans' Court Opinion, 2/4/2015, at 22.

In support of its decision, the orphans' court provided the following rationale:

> Because the County had already paid approximately $5,000 for the report, and because counsel for petitioner and Mr. Sabatino saw no need to cross-examine Dr. Malamut, the Court advised Ms. Darr that it would be free to call Dr. Malamut as DRN's witness, however, DRN would have to bear the cost for that appearance. … DRN was not deprived of the right to cross-examine Dr. Malamut; it was simply required to bear the costs for calling an expert witness.  That ruling was neither unreasonable nor unfair.

Orphans' Court Opinion, 2/4/2016, at 22.  We disagree with the orphans' court, and conclude that the court abused its discretion to the extent it forced DRN to accept the report without the opportunity to cross-examine Dr. Malamut unless DRN paid her fee to testify at the hearing.

In arriving at our determination, we have considered that the guardianship petition was contested, that Mr. Sabatino had the right to cross-examine Dr. Malamut, and that Ms. Darr was permitted to **participate fully** in the proceeding to advocate Mr. Sabatino's position against the

_____

[22] DRN challenged the orphans' court's ruling in a letter to the court, dated July 10, 2015.  **See** Response in Opposition to Petitioner's Motion to Disqualify Kelly Darr, Esquire, and DRN, 7/14/2015, Exhibit D.

petition. The cross-examination of Dr. Malamut by Ms. Darr was clearly conducted to advance Mr. Sabatino's position. Therefore, we agree with DRN that "the [o]rphans' [c]ourt's order requiring DRN to pay for Dr. Malamut to appear and testify, rather than the county, effectively required Mr. Sabatino's counsel to bear the costs." **See** DRN's Brief at 63. We further note the argument of DRN in its brief that "after Ms. Darr subjected Dr. Malamut to cross-examination, Ms. Zabowski argued and the [o]rphans' court concluded that Mr. Sabatino did not need a plenary guardian of the person (only a limited guardian) and did not need a guardian of the estate at all." **Id.** at 63–64.

We conclude that the County should bear the cost of Dr. Malamut's fee for the time she testified in court. Nonetheless, it is unclear to this Court as to whether it was necessary for DRN to arrange for Dr. Malamut to be present for the two days of the hearing. Therefore, we remand to the orphans' court for a hearing to determine whether there were less expensive alternatives for Dr. Malamut to obtain the information from the witnesses and how critical the witnesses' testimony was to Dr. Malamut's cross-examination. Consequently, we reverse the orphans' court's order that required DRN to pay the court appearance fee of Dr. Malamut, and remand

for a hearing on whether DRN should compensate Dr. Malamut for her court appearance apart from her examination.[23]

Final Decree affirmed.  Orders of January 8, 2015 and July 29, 2015, appointing Ms. Zabowski as Mr. Sabatino's counsel to replace Ms. Darr are affirmed.  Order of September 9, 2015, denying DRN's motion to disqualify Diane Zabowski, Esquire, as counsel for Mr. Sabatino, is affirmed.  Order of July 28, 2015, directing DRN to pay Dr. Malamut's court fees is reversed and remanded for a hearing regarding allocation of Dr. Malamut's court appearance fee.  Jurisdiction relinquished.

_____

[23] It bears mention that The Guardianship Monitoring Committee of the Elder Law Task Force, chaired by this author, made Committee Findings, which included the following finding:

1. A deposition form completed by the evaluator that contains the evaluator's assessment of the capacity of the alleged incapacitated person ("AIP") may be submitted to the court in the place of sworn testimony.  Accepting written testimony is a cost-saving measure that relieves the evaluator of the burden of testifying in person and is especially applicable in uncontested cases.

Report and Recommendations of the Elder Law Task Force, 11/2014, Guardianship Monitoring Committee Findings and Recommendations, § I.B.1. at 113.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>11/30/2016</u>